25 C.C.P.A. (Patents)

### CONOVER v. KOCH.
### Patent Appeal No. 3860.

Court of Customs and Patent Appeals.
Jan. 24, 1938.

Joseph R. Mares, of St. Louis, Mo., for appellant.

Hauff & Warland, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding affirming the decision of the Examiner of Interferences awarding priority to the party Koch upon a single count which reads:

"1. The process for the production of pure benzoic acid which comprises treating crude benzoic acid obtained from phthalic anhydride with a small amount of water which is sufficient to dissolve any phthalic acid and phthalic anhydride present, thereby hydrating the phthalic anhydride, and separating the solution from the benzoic acid."

Before us there was no appearance for appellee, nor was any brief filed in his behalf.

The interference was declared between an application of the party Koch, filed February 25, 1929, and an application of the party Conover, filed June 16, 1930. Koch took no testimony and is restricted to his filing date for conception and reduction to practice. Upon Conover rests the burden of establishing conception and reduction to practice prior to Koch's filing date, or prior conception, coupled with diligence, from just prior to the date upon which Koch filed.

Originally two counts were involved in the interference, and as to both Conover

moved to dissolve on the ground that the disclosure of Koch did not support them. The motion was sustained by the Examiner of Interferences as to count 2, but denied as to count 1, the count in issue. There was no appeal by the party Koch, and the party Conover proceeded to take testimony for the purpose of showing reduction to practice by him of count 1 prior to the filing date of Koch in whose application the count originated.

It will be observed that the count requires the treatment of "crude benzoic acid obtained from phthalic anhydride with a *small amount of water* * * * sufficient to dissolve any phthalic acid and phthalic anhydride present, * * *" with the result that the phthalic anhydride is hydrated and the solution is separated from the benzoic acid. (Italics ours.) The phrase "a small amount of water" does not appear in either specification but did appear in the original claim of the Koch application. Obviously, standing alone, the phrase is indefinite. It is, perhaps, clarified somewhat by the clause which follows " * * * sufficient to dissolve any phthalic acid and phthalic anhydride present." For the actual amounts of water whose use is taught we are remitted to the examples given in the specification of Koch and to the evidence relative to Conover's reduction to practice.

It appears that benzoic acid is manufactured from phthalic anhydride. It is said in the brief for Conover that two processes for its manufacture are known, one being by a vapor phase process and one by a liquid phase process. Conover holds patents for both processes, as is evidenced by three patents filed as exhibits to Conover's testimony, two of them covering separate features of the so-called liquid phase in which steam is bubbled through molten phthalic anhydride containing a catalyst. The steam reacts with the molten anhydride and forms benzoic acid, but the transformation is not complete under all conditions and, as a result, there must be purification to remove the unreacted phthalic anhydride. The invention at issue relates to the last named step.

The following statement is made in the brief for Conover and appears to be based upon Conover's specification:

"One step in the process of removing the phthalic anhydride consists in hydrolyzing the anhydride with water to form phthalic acid. In the second step the phthalic acid is dissolved by the addition of more water. Thus, it is to be noted that water serves two functions:

"1. To hydrate the phthalic anhydride to form phthalic acid.

"2. To dissolve the phthalic acid."
The brief then adds:

"The amount of water required for the first function is small compared to the amount of water required for the second function. A great deal of water for one function might easily be an insufficient quantity for the second function. * * *"

While we have no reason to question the accuracy of this last statement, it is not found specifically set forth in the specification.

The specification of Koch recites:
"According to my present invention the purification of the crude benzoic acid is effected by treating it with a reducing agent, converting any phthalic anhydride present into a readily soluble compound, such as phthalic acid or readily soluble salts, and removing the impurities by leaching with water or aqueous solutions. By the said treatment with a reducing agent any naphthoquinones that may be present in the crude benzoic acid, are converted into readily soluble naphthohydroquinones.

"The process according to my invention may be carried out by making the crude benzoic acid, which has previously been brought into a state as finely divided as possible, so that its particles have a diameter of, for example, 0.01 to 0.02 millimeter, into a paste with water and treating that paste while stirring with sodium bisulphite or gaseous sulphur dioxide; thereby the naphthoquinones are converted into the corresponding naphthohydroquinones and any phthalic anhydride present is converted into phthalic acid. By filtering the mass by suction, the aqueous solution which contains the impurities is removed, and practically pure benzoic acid is left on the filter. If necessary, the said operation may be repeatedly applied.

" * * * In case the crude benzoic acid is free from naphthoquinone, the treatment with a reducing agent may even be dispensed with. * * *"

It will be observed from the foregoing that, except in cases where naphthoquinone is absent from the crude benzoic acid, Koch teaches the use of a reducing agent; sodium

bisulphite or gaseous sulphur dioxide being named as such. Sodium carbonate is also named in the Koch specification.

The Conover specification recites that: "It is advantageous to add a small quantity of a basic material such as sodium carbonate to the crude benzoic acid."

The count makes no mention of a reducing agent.

Koch gives a number of examples illustrating the ingredients and proportions thereof used by him. It is noted that in the examples so given he mentions the use of a reducing agent, such as sodium sulphite and sodium bicarbonate. In three of the examples here pertinent the proportions of water to crude benzoic acid is that of three parts water and one part acid; in a fourth example the proportion is that of two parts water to one part acid. No example is given of the proportions of water and acid when no reducing agent is shown.

In the Conover specification it is recited, in substance, that he distills benzoic acid with steam, and that he thus obtains a "condensate consisting essentially of equal amounts by weight of water and benzoic acid." This, as we understand it, is the step of hydrolyzing the anhydride with water, and it is followed by dissolving the phthalic acid by adding more water. We do not find any statement in the specification showing the proportions of water and acid used by Conover to begin the first step, nor is there any definite statement therein of the amount of water added to perform the second step.

Upon these questions testimony was adduced on behalf of Conover, he himself testifying, his testimony being supplemented by that of a witness named Haake, an assistant chemist in the employ of Conover's company.

The oral testimony is not clear as to the amounts of water used. It is pointed out by the board that Conover stated that, in general, the condensate contained a great deal of water, and that Haake stated that "an appreciable quantity of water was condensed, that they always used an excess of water."

However, in connection with the oral testimony a number of exhibits were filed, certain of these being a series of notebooks and papers in which were kept records of processes carried out over a number of years at Conover's plant, some of the earlier of these being in June and July, 1925. According to the oral testimony, the result obtained by these processes was satisfactory— the end sought being accomplished. It should be stated that both applications teach the repetition of the process where necessary to attain the desired degree of purity.

It is urged by counsel for Conover that the testimony with respect to the use of "an excess of water," or "a great deal of water," related to amounts used in the step of hydrolyzing phthalic anhydride to form phthalic acid, and not to the amount required for the step of dissolving the phthalic acid. Our review of the oral testimony upon this point, taken in connection with the pertinent experiments recited in the exhibits alluded to, leads us to the conclusion that the contention of counsel for Conover in this regard is correct.

In one of the exhibits, marked as No. 11, there are shown the proportions of water, phthalic acid, and benzoic acid present in different experiments at the Conover plant, and a table in the brief for Conover, prepared from the experiment records, shows the use in one instance of 273 parts of water to 100 parts of combined benzoic acid and phthalic acid; in another of 345 parts of water to 100 parts of the combined materials; and in another of 1,090 parts of water to 100 parts of the combined materials. The first two are quite near the range of Koch's examples of three to one proportions. The experiments, or processes, so shown were carried out prior to the filing date of the Koch application.

The decisions of the tribunals of the Patent Office seem to have been greatly influenced by the teaching of Koch to the effect that when the crude benzoic acid is free from naphthoquinone the use of a reducing agent may be dispensed with. It is assumed that the reasoning of the tribunals in this connection was that if the reducing agent be dispensed with a less amount of water is required. We find no teaching to this effect in the Koch application.

As has been pointed out, in all the pertinent examples of Koch where proportions are stated, a reducing agent is included, none being given where no such agent is present.

As we interpret the record, the use of the water in the Conover process, as described in his Exhibit 11, was in the same relationship and for the same purpose as

the use of the water in the pertinent examples recited in the Koch specification— that is, for the final step of removing the unreacted phthalic anhydride. It is pointed out by appellant that the Examiner of Interferences in denying Conover's motion to dissolve as to the count in issue expressly held that by reason of Koch's examples (particularly example 2 where use was taught of 3 parts of water to 1 part of benzoic acid), taken in connection with the statements of the claim which became the count, the count was supported by the Koch disclosure. This, in effect, amounted to a holding that three parts of water to one part acid supports the limitation, "a small amount of water."

We do not have, in this proceeding, any question of patentability, nor is there any question made as to Conover's disclosure being sufficient to support the count. The only question is whether Conover reduced the invention to practice before Koch's filing date. It seems to us that by the use, respectively, of 273 parts of water to 100 parts of acid and 345 parts of water to 100 parts of acid, he came reasonably within the range taught by at least three of Koch's examples, and since this was done by Conover prior to the filing date of Koch, we are of the opinion that priority should be awarded the former.

Accordingly, the decision of the Board of Appeals is reversed.

Reversed.